UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:10-CV-00745-R

JACKIE TREAT                                                                                    PLAINTIFF

v.

STEVEN SHEDLOFSKY, et al.,                                                        DEFENDANTS

MEMORANDUM AND ORDER

This matter comes before the Court on the multiple motions to dismiss by Defendants (DN 11, DN 17, DN 36). Problems with the service of process on several Defendants caused Plaintiff to respond to some but not all of these motions (DN 28). Plaintiff has filed two motions of his own, asking the Court to deny Defendants' motions and grant the relief he requests (DN 33; DN 37). The Court has considered the motions and does not require further briefing. For the reasons that follow, all pending motions in the matter are DENIED. The Court will instead issue a scheduling order so that the parties may exchange discoverable materials and address the outstanding claims for injunctive relief.

BACKGROUND

Plaintiff Jackie Treat is incarcerated in Kentucky State Reformatory ("KSR"). He suffers from a variety of health problems, including Hepatitis C ("HCV") and morbid obesity. Treat brings this action, *pro se*, requesting future treatment under the Kentucky Department of Correction's Hepatitis Management Program and alleging breaches in the standard of care for his past treatment.

**I. Hepatitis Management Program**

The Kentucky Department of Correction's Hepatitis Management Program ("HCV Plan")

1

was developed by state officials in response to litigation by prisoners complaining of their HCV treatment. *See Paulley v. Chandler*, No. 3:99-CV-00549, 2000 WL 33975579, at *1 (W.D. Ky. 2000). Defendant Dr. Shedlofsky drafted the most recent version of the HCV Plan and served as its director during the relevant time frame for this action. Plan, DN 1-3.

When a prisoner is diagnosed with HCV, the HCV Plan lays out the procedure for treating and controlling the disease. Plan, DN 1-3 at 6. The extent of the treatment provided under the HCV Plan crests with interferon/ribavirin treatment, a combination of immunostimulation and antiviral drugs. Plan, DN 1-3 at 6. The HCV Plan does not cover or consider prisoners who need more drastic remedies like liver transplants.

Prisoners may be denied treatment under the plan if they fall into various categories of ineligibility. Plan, DN 1-3 at 7. Reasons for absolute exclusion from the HCV Plan include decompensated liver disease, "defined as having poorly controlled ascites, recurrent variceal bleeding, coagulopathy . . . , or hepatic encephalopathy." Plan, DN 1-4 at 5. Prisoners are further disqualified from treatment if they have "poor control of a major medical illness," which includes morbid obesity. Plan, DN 1-4 at 5. Morbid obesity is defined as a body mass index ("BMI") above 35. Plan, DN 1-4 at 5.

As a part of the HCV Plan, prisoners undergo liver biopsies if they pass the initial screenings for ineligibility and if their levels of alanine aminotransferase ("ALT") are greater than normal.[1] Plan, DN 1-3 at 9. If the biopsy demonstrates compensated cirrhosis with

---

[1] An explanation for ALT and its significance in measuring a liver's health is as follows:

[ALT is ] an enzyme of the transferase class that catalyzes the reversible transfer of an amino group from alanine to a-ketoglutarate to form glutamate and pyruvate, with pyridoxal phosphate as a cofactor. The reaction transfers nitrogen for excretion or

elevated ALTs, the prisoner is a candidate for interferon/ribavirin treatment. Plan, DN 1-3 at 9. Should the biopsy be favorable and demonstrate a less sever type of fibrosis, the prisoner is not eligible for interferon/ribavirin treatment. Plan, DN 1-3 at 9. Under such a scenario, "[a] plan should be made to follow the inmate's ALTs every 6 months and perform another liver biopsy in 3 years to determine if there has been progression of liver injury." Plan, DN 1-3 at 9. It is the prisoner's responsibility to contact the facility's medical staff to schedule the follow-up biopsy. Plan, DN 28-2 at 1.

## II. General Background

Treat was diagnosed with HCV in 2003. In June of that year doctors performed a biopsy of his liver to evaluate the infection. It showed Treat was suffering from stage F1 fibrosis, which did not qualify him for interferon/ribavirin treatment under the HCV Plan. DN 11-2 at 7. Shedlofsky approved a follow-up liver biopsy in 2006. DN 11-2 at 8. For reasons unknown to Shedlofsky, this second biopsy was never performed. Shedlofsky Aff. ¶ 6(b), DN 11-2 at 3.

In August of 2008, treatment for Treat's HCV was interrupted as a result of his obesity. DN 11-2 at 8. At that time, Treat's BMI was 47, well over the upper limit of 35 needed to qualify under the HCV Plan. DN 11-2 at 8. Shedlofsky reissued his decision on October 26, 2008, that Treat's obesity precluded him from drug treatment under the HCV Plan. DN 11-2 at 9. By June 24, 2009, Treat had developed ascites and decompensated cirrhosis. DN 11-2 at 10.

---

for incorporation into other compounds. The enzyme is found in serum and body tissues, especially in the liver. Serum enzyme activity (SGPT) is greatly increased in liver disease and also elevated in infectious mononucleosis.

*Alanine Transaminase Definition*, Dorlands.com, http://www.dorlands.com (last visited November 18, 2011).

Decompensated cirrhosis is a separate basis to deny Treat access to the HCV Plan and makes him ineligible for interferon/ribavirin treatment.

In May of 2010, Treat filed a grievance with KSR alleging that he recently learned of his HCV infection, had developed chronic active cirrhosis with ascites, and solicited admission to the HCV Plan. DN 1-1 at 1. Doctor Frederick W. Kemen responded to the grievance, explaining that one reason for ineligibility was morbid obesity, which constitutes a BMI no greater than 35. DN 11-2 at 12. Since Treat weighed 361 lbs. and had a BMI of 50.6, Kemen explained he was excluded from antiviral treatment. DN 11-2 at 12. Kemen continued, noting Treat had written him a letter in September of 2009 inquiring about the HCV Plan. DN 11-2 at 12. With this, Kemen concluded Treat was aware of his diagnosis of HCV with cirrhosis well before his grievance. DN 11-2 at 12.

Treat files this action protesting his medical treatment at Defendants' hands. He brings it pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"), alleging the denial of treatment for his HCV violates the law. Treat sues the following individuals: (1) Shedlofsky, the director of the Kentucky Department of Correction ("KDOC") hepatitis management program, (2) Haas, KDOC's Medical Director, in their individual and official capacities, (3) Kemen, a physician at KSP, and (4) Dr. Rashid Faiyaz, another physician at KSP. Treat also pursues claims against CorrectCare-Integrated Health, Inc. (collectively "Defendants"). He asks the Court to issue injunctive relief and order treatment under the HCV Plan. He further seeks placement on the transplant list, compensatory damages, and punitive damages.

## DISCUSSION

### I. Motions to Dismiss

Through three separate motions, Defendants have moved to dismiss Treat's action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). DN 11; DN 17; DN 36. Collectively, they insist the factual basis for Treat's complaint is disconnected from the causes of action he asserts, and therefore dismissal is appropriate. Shedlofsky has attached an affidavit to his motion to dismiss describing Treat's medical history and his care under the HCV Plan. Within, Shedlofsky offers a bleak prognosis of Treat's medical predicament:

> The therapy requested by Mr. Treat is an FDA approved treatment involving an injection of pegylated interferon once a week and oral ribavirin twice a day. The treatment is difficult to tolerate and includes risks of serious complications, including anemia, severe depression, rash, respiratory distress, blindness, and death. Accordingly, the algorithm to determine whether an inmate receives treatment includes an evaluation of whether the patient is healthy enough to undergo the treatment as well as the likelihood of success of treatment. The treatment is significantly less effective in patients that are obese. . . . Persons that are obese (defined as those with a BMI greater than 35) do not qualify for the treatment, and this policy is stated out in [the HCV Plan]. Success of antiviral therapy also depends on which of the three genotypes of the virus is present in the patient. . . . [G]enotype 1, which is Mr. Treat's genotype, is the most prevalent and is unfortunately the least curable genotype with a success rate of only 40-50% . . . .

Shedlofsky Aff. ¶ 8, DN 11-2 at 4-5. In Shedlofsky's opinion, Treat should not receive the requested antiviral drugs under the HCV Plan. Shedlofsky Aff. ¶ 9, DN 11-2 at 5. The other Defendants have incorporated Shedlofsky's sworn statement and the affirmations about Treat's medical care within their respective motions to dismiss. DN 17-6 at 6 n. 1; DN 36-1 at 4 n. 7.

Federal Rule of Civil Procedure 12(d) permits a court to construe a motion to dismiss under Rule 12(b)(6) as one for summary judgment when "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Upon such an occurrence, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent

to the motion." *Id*.  "It has been the longstanding rule that 'where the district court intends to convert the motion, the court should give the parties notice of the changed status of the motion and thereby provide the parties to the proceeding the opportunity to present to the court all material made pertinent to such motion by Rule 56.'" *Fox v. California Franchise Tax Bd.*, No. 11–1037, 2011 WL 4792865, at *2 (10th Cir. 2011) (quoting *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986)).  A district court has broad discretion when deciding whether to convert a motion to dismiss to one for summary judgment.  *Bruce v. Correctional Medical Services, Inc.*, 389 F. App'x 462, 465 (6th Cir. 2010).

  The Court has reviewed the record and does not believe Treat has possessed an adequate opportunity to gather and present the evidence to rebut these motions.  Defendants Kemen and Faiyaz, physicians charged with Treat's day-to-day care at KSP, have recently joined this action.  DN 11-2 at 10-12.  They may possess materials relevant to Treat's theories of recovery.  Treat should be permitted to receive discovery from these parties about his past and current medical records before the Court issues a dispositive ruling.  In addition, Defendants have altogether omitted proof on Treat's Eighth Amendment claims for failure to monitor his HCV between his biopsy in 2003 and Shedlofsky's reexamination of his condition in 2008.  Treat alleges this oversight constitutes deliberate indifference to his medical needs.  Compl. ¶¶ 40, 55, DN 1 at 10, 13.  It remains unclear what steps Defendants took to monitor Treat's HCV during this period.  Without more evidence, the Court cannot decide these claims.

  The Court will exercise its discretion and deny these motions to dismiss.  Summary judgment is premature since Defendants have offered factual matters outside the pleadings without providing Treat a sufficient opportunity to respond to the allegations within their

motions. The Court will permit a period of discovery between the parties where they can exchange the relevant portions of Treat's medical records. Defendants may then file motions for summary judgment at a later date when Treat has had time to develop a more thorough factual basis for his claims. For the foregoing reasons, Defendants' motions to dismiss are DENIED.

## II. Injunctive relief

Treat petitions for injunctive relief ordering the Defendants to provide treatment under the HCV Plan, have him evaluated for a liver transplant, and place him on the transplant list. A court may grant a preliminary injunction if a plaintiff is able to demonstrate the following factors:

> (1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits; (2) Whether the plaintiffs have shown irreparable injury; (3) Whether the issuance of a preliminary injunction would cause substantial harm to others; (4) Whether the public interest would be served by issuing a preliminary injunction.

*Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977) (citations omitted); *accord S.B. ex rel. Brown v. Ballard Cnty. Bd. of Educ.*, 780 F. Supp. 2d 560, 562 (W.D. Ky. 2011). The four factors should be "balanced [,]" are "not prerequisites that must be satisfied[,]" and "are not meant to be rigid and unbending requirements." *Am. Imaging Servs., Inc. v. Eagle–Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992) (citations omitted). Prisoners with HCV are often denied preliminary injunctions where they ask courts to order medical treatment previously denied by their physicians. *Davidson v. Texas Dept. of Criminal Justice, Institutional Div.*, 91 F. App'x 963, 966 (5th Cir. 2004); *Hughes v. Lavender*, No. 2:10-CV-674, 2011 WL 2457840, at *1 (S.D. Ohio June 16, 2011); *Sandon v. Bureau of Prison*, No. 08-CV-188, 2008 WL 4500227, at *4-5 (E.D. Ky. Oct. 1, 2008).

Defendants' motions to dismiss include only cursory responses to Treat's motion for injunctive relief.  Of most concern to the Court is their joint refusal to address the merits of Treat's request for a liver transplant or placement on the transplant list.  Rather, Defendants advance that Treat did not raise this issue in his grievance form as required by the Prison Litigation Reform Act ("PLRA") and therefore it has been waived.

The Court recognizes there is prior legal precedent holding that a hepatitis management plan may withhold treatment because an inmate does not meet the plan's preestablished parameters.  *See e.g.*, *Johnson v. Million*, 60 F. App'x 548 (6th Cir. 2003); *Howze v. Hickey*, No. 10-CV-094-KKC, 2011 WL 673750, at *1 (E.D. Ky. Feb. 17, 2011).  Nevertheless, the Court would prefer the Defendants to address Treat's demands for injunctive relief in light of the above-stated standard.  The Court also harbors concerns over Defendants' response to the request for a liver transplant.  The policies and procedures of the KDOC require, above all, that a prisoner have healthcare services to prevent death.  DN 23-1 at 2.  The lack of information prohibits the Court from evaluating Treat's need to for this procedure, whether he could survive such an operation in his condition, or whether his numerous health problems would foreclose this treatment altogether.  The Court can only glean two certainties from the record with respect to liver transplantation: Treat has asked for consideration and KDOC's staff has refused.  The Court would like to know why.

Accordingly, the Court will order Defendants to respond to Treat's request for injunctive relief on the merits.  Included within, Defendants should include affidavits from his medical providers with the following information: (1) whether Treat or his physicians have made a formal request for a transplant to the KDOC's medical director; (2) if such a request has been

8

made, the outcome of this request; (3) the process by which prisoners in the KDOC are evaluated for a transplant; (4) the implications of a transplant for someone with Treat's condition; (5) whether Treat's comorbidities make him a likely candidate for transplantation; (6) any relevant history of past transplants or similar procedures approved by the KDOC for prisoners with HCV or liver failure; (7) any other information that would aid the Court in its decision. The schedule for this briefing will follow in a separate order.

### III. Insufficient Process

As an independent basis for dismissal, Shedlofsky avers dismissal is appropriate under Federal Rules of Civil Procedure 12(b)(3) and (4) because he was improperly served. He states the summons was mailed to his place of work via certified mail and signed for by someone who was not authorized by law to accept it. Shedlofsky Aff. ¶ 11, DN 11-2 at 5. The summons and the attached return of service supports such a contention, as the signatory of the return receipt is not Shedlofsky.[2] DN 13 at 2. He concludes the improper service compels dismissal of the suit.

Federal Rule of Civil Procedure 4(e)(1) permits service on defendants "following state law for serving a summons in an action brought in courts of general jurisdiction." Under the Kentucky rules, service may be effectuated by certified mail on an individual defendant, but only if the defendant personally signs for the letter when it arrives. CR 4.01(a). In *Douglas v. University of Ky. Hosp.*, No. 2006-CA-002149-MR, 2008 WL 2152209, at *1 (Ky. Ct. App. May 23, 2008), the Kentucky Court of Appeals construed the impact on service where a nonparty signed the return receipt in lieu of the intended party. There, the court interpreted CR 4.01 to

---

[2] The signature of the letter's recipient is illegible and therefore the name on the return receipt remains a mystery for the Court. However, upon review, it is not the signature of Shedlofsky.

mean service was complete upon delivery of the envelope, but where the signatory was not the intended recipient, that goal remained unaccomplished. *Id.* at *3. Although the court recognized the plaintiffs had attempted to comply with CR 4.01 in good faith, the rule did not provide such an exception and failure to abide by this strict interpretation divested the court of personal jurisdiction over the intended defendant. *Id.* at *3. Accordingly, CR 4.01 requires that the individual to be served must sign for the letter upon the arrival. *See Mitchell v. Money*, 602 S.W.2d 687 (Ky. Ct. App. 1980).

Congress has enacted special service rules for plaintiffs proceeding in forma pauperis ("IFP"). Those rules were described in *Byrd v. Stone*, 94 F.3d 217 (6th Cir. 1996):

> The plaintiff generally bears responsibility for appointing an appropriate person to serve a copy of his complaint and the summons upon a defendant. The appointed person is usually a commercial process server plaintiff has contracted with to effectuate service for a fee. In the case of a plaintiff proceeding in forma pauperis, however, the assumption is that, because the plaintiff cannot pay fees and costs, it is likely the plaintiff cannot afford to hire a process server. For this reason, 28 U.S.C. § 1915(c) provides that the officers of the court "shall issue and serve all process" when a plaintiff is proceeding in forma pauperis. Fed.R.Civ.P. 4(c)(2) dovetails with § 1915(c) by providing that the court must appoint a United States Marshal to serve plaintiff's process "when the plaintiff is authorized to proceed in forma pauperis pursuant to 28 U.S.C. § 1915." Together, Rule 4(c)(2) and 28 U.S.C. § 1915(c) stand for the proposition that when a plaintiff is proceeding in forma pauperis the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint.

*Id.* at 219 (internal citations omitted). "In this Circuit, . . . once an [IFP] plaintiff identifies the subject defendant by name, the burden shifts to the United States Marshals Service to obtain his or her current address and to properly effect service." *Allen v. Aramark Corp.*, No. 3:07CV-P260-M, 2009 WL 1126093, at *1 (W.D. Ky. Apr. 27, 2009) (citing *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990)).

In the case at bar, Treat took the proper steps to effectuate service on Shedlofsky and the other defendants. DN 10. The Marshals Service issued the summons and a copy of the complaint to Shedlofsky's place of work in accordance with its procedure. Though it is unclear why one of Shedlofsky's coworkers signed the return receipt for him, this failure cannot be attributed to Treat.

Shedlofsky is aware of the lawsuit and the bases for which Treat seeks relief. Indeed, he received a copy of the complaint through the mail only days after it was issued. In an effort to alleviate the burden on the Marshalls Service, the Court attempts to secure a waiver of service of process when possible. Absent a waiver in this case, the Court will redirect service by the Marshalls Service. Accordingly, **IT IS ORDERED that Defendant Shedlofsky shall have 14 days from the date of this Memorandum and Order to submit a notice of waiver of service.** Given the nature of Treat's medical condition, waiver is the most appropriate course of action.

If he elects not to waive service, Shedlofsky must provide the Court with his home address within **14 days** of the date of this Memorandum and Order. The address may be filed under seal and will be used only to effect service. If filed under seal, the address will not be provided to Plaintiff.

If an address is provided by Shedlofsky, **the Clerk of Court is DIRECTED to issue summons and have the United States Marshal serve a copy of the complaint (DN 3) and summons on Shedlofsky in accordance with Rule 4 of the Federal Rules of Civil Procedure.**

### IV. Treat's motions

Treat has filed a motion to submit and a motion for immediate resolution. (DN 33; DN 37). Both are more aptly construed as sur-replies to the instant briefing. Treat restates his

11

opinion that he should prevail on summary judgment and that he is entitled to default against certain Defendants. He also solicits the aid of a court-appointed attorney under 28 U.S.C. § 1915(d).

The Court will deny these motions considering its decision to permit discovery and compel Defendants to respond to his requests for injunctive relief. It will wait for the evidentiary disclosures implicated by this motion before deciding on whether to appoint counsel. Treat may then file another motion for the aid of counsel where the Court can judge his request in light of the new proof.

For these reasons, these motions are denied.

## CONCLUSION

IT IS HEREBY ORDERED:

(1)   Defendants' motions to dismiss (DN 11; DN 17; DN 36) are DENIED.

(2)   The Court shall issue a scheduling order in conjunction with this memorandum and order. It shall set forth a time table to disclose discoverable items and address Plaintiff's claims for injunctive relief.

(3)   The Clerk of Court is directed to mail Dr. Steven Shedlohsky a Waiver of Service Summons Form 5 under Federal Rule of Civil Procedure 4(d)(1). The Clerk of Court is further directed to include a copy of this order.

>   Dr. Steven Shedlohsky
>   c/o Andrew D. DeSimone
>   333 West Vine Street, Suite 1400
>   Lexington KY 40507

(4)   Following receipt of Form 5, Dr. Steven Shedlohsky shall have 14 days to waive service. If he chooses not to, the Court shall order the Marshalls Service to

        reissue the summonses and effect service on Dr. Steven Shedlohsky.

(5)      Plaintiff's motions (DN 33; DN 37) are DENIED.